This case should be vacated primarily for three reasons. First, although everyone agrees that some exception to mootness is needed to say this order, no exception applies. Rather, this case became moot because plaintiffs waited too long to seek certification. Second, the definition of the incompetent detainee class contains persons who cannot plausibly allege an injury in fact and therefore lack standing. And third, this order lacks the requisite rigorous analysis in several respects. The district court never discussed our dispute about the applicable legal standard and how that would affect commonality. The district court never addressed the evidence of dissimilarities among class members, and the court failed to appoint class representatives. So how could any of that have been done without any class representatives? I don't know how we got it without having any class representatives, because I don't know how that evaluation could have been completed. It's true, Judge Clement. Without class representatives, the court necessarily could not have assessed whether they met typicality and adequacy of representation. And that error was not apparent until the class certification order actually issued. You know, they had proposed class representatives. The district court did not approve any of them, and so we end up with this order that doesn't have class reps. But it nonetheless, on its face, purports to be a final appealable order certifying these classes, or at least subject to permission to appeal under Rule 23F. Could a class representative, assuming that someone is aggrieved at that moment, be accepted as a class representative, even though his or her circumstance may change? As I understand the facts of this case, we have people that are sort of transiently in this class, this purported class, and they're awaiting assignment to a facility. And there's always going to be people that go into this extended phase of incarceration awaiting assignment to a facility. So is it possible, just theoretically, and I understand your argument that class certification is improper, generally for many reasons from reading your brief, but is it possible that a class representative who is currently aggrieved can serve as a representative, even though his or her case, he or she may ultimately be assigned within a month or two to a facility? It's theoretically possible, although assuming that person had a live claim at the time of certification and was appointed as a class representative, the district court would have authority to amend the class certification later to appoint a different representative if it concluded that that person being admitted to a state hospital was no longer appropriate to be a class representative. But all that presumes that somebody was appointed as a class representative in the first place. And so they've argued that amendment power under Rule 23, but typicality and adequacy of representation are prerequisites to certification. So somebody has to satisfy those at the outset, at the time of the order, and that was not done. So in this case, we don't have a class representative. We have rather an invitation by the court to present class representatives with a certification on the front end. Is my understanding correct? That's correct, Your Honor. And it's common ground. They admitted below that the order does not appoint class representatives. And in the order, the district court instructed them to file an amended complaint that would include additional plaintiffs to be appointed as class representatives. But that's not proper because that means this class certification order is incomplete. What's your position on the time frame from the time that the letters received until the time that the inmate at that point needs to be transferred to a hospital or a mental health facility? What's your position on that timing? Is it a reasonable component, and how do you define that? It seems like from your pleadings you're almost thinking it should be immediate, which, of course, is impossible. Right. Well, that's the way the plaintiffs have framed their complaint. Their argument is that someone has a constitutional claim the moment they're committed to the state hospital system. But no law supports that. And there's an internal inconsistency in their complaint because their claim is that there is no constitutional injury unless they have been detained for an unreasonable period of time without treatment. And yet this class definition sweeps in, at least as to the incompetent detainees,  And our position is that such persons cannot plausibly allege an injury in fact because they have no actual or imminent injury at that point. So what's your position on the timeliness of the reasonableness of placing someone? Do you mean on the merits of that? We don't have a position on that yet. We haven't reached the merits. Well, the certification order didn't. No, the certification order did not either. And it's the plaintiffs have framed our position as we have to take some position on that or we are asking that they take some position on that at this point. And that's not our position. Our position is not that the court would have to decide at the certification stage that X amount of time is reasonable. Our position is just that — Isn't that the tail wagging the dog? I mean, that's the issue. It's the delay. The delay is the issue, yes. So what's your position? I guess I'm not sure I understand your question, Judge Clement. If you're asking me what is our position on the merits as to what time is a reasonable time, we haven't taken a position on that yet. And part of the reason we haven't taken a position on that yet is the parties dispute the applicable legal standard in this case. The applicable what? The applicable standard for culpability for their substantive due process claims. And this is exactly the same dispute that was at issue in this Court's decision in MD v. Perry in 2012. Our position, and we raised this in the response to the motion for class certification, is that the proper standard is that we had to have been deliberately indifferent to the health and safety of an individual such that it shocks the conscience, and that would give rise to individuality or individualized issues that may preclude commonality. The plaintiff's position is no, it's the Youngberg professional judgment standard that applies, and you don't have to get into that. But as in MD, the district court never addressed that. Even though we joined issue on it in the class certification briefing, the district court never discusses that. And, in fact, the second common question of fact and the common question of law both just presume that the professional judgment standard applies. And so in our view, we're in exactly the same spot as this Court's decision in MD v. Perry in 2012 where the Court said declining to analyze that dispute was error, and the Court didn't decide, didn't say we have to decide that in the first instance. It said we're going to send it back to the district court so the district court can address it, but it has to address it with reference to the elements of the claims, the defenses, the proof, and it has to support that discussion with reasoning. None of that happened in this class certification order. I do want to go back to the mootness exception. That is the threshold issue in this case, and I'll discuss the two exceptions that they argued below, inherently transitory claims and the Court's delay in ruling on certification. In 2013, in the Genesis Healthcare case, the Supreme Court clarified what an inherently transitory claim is. It focuses on the fleeting nature of the challenged conduct, and that conduct must be so fleeting that it is effectively unreviewable because no plaintiff will have a claim long enough to reach the certification stage. Here the challenged conduct is allowing persons committed to state hospitals to remain detained in county jails for periods that have lasted over a year. That conduct is in no sense fleeting, and indeed, just in the small sample size of these seven plaintiffs, three of them were detained between 13 and 15 months. So that's not fleeting conduct, and given those delays, it can't be said that no plaintiff will have a claim that reaches certification. What happened here is they waited too long to seek certification. At the time they filed their class certification motion in late November 2016, two of the plaintiffs had already been admitted to state hospitals, and so their statement on page 31 and 32 of their response brief that they all had live claims at the time they moved for certification is not correct. Let me ask you on that along those lines. Have any of the named incompetent detainee plaintiffs already been adjudged on more than one occasion to be incompetent in the same class? In other words, the capable of repetition issue contemplates someone being declared incompetent and then going to a facility and then subsequently being declared competent enough. I think there's some argument in there that as to an individual, it could be repeated. Has that ever happened in this case for any of these plaintiffs that you know of? There was only one allegation in their complaint that even addressed a plaintiff's prior criminal history, and it was Mr. Ward, and it referred to his past involvement. And you know of no other than that instance? Not on this record, Your Honor, but in any event, they did not make that argument below, and so the first response is that it's been waived for appeal. The second argument is that that rests on the assumption that these individuals will engage in future criminal conduct, and we just had some 28-J letters submitted about the Sanchez-Gomez case, and the court said that's a settled rule, that this exception can't be based on assumptions of future criminal conduct. Well, Ed, I'm not talking specifically about future criminal conduct. I'm talking about a particular individual who is a class member, whether it's Mr. Ward or someone else, who is declared incompetent but then subsequently is remanded back and can assist in his defense and then again at some point is declared incompetent. I mean, that happens from time to time. I realize it's rare, but since we are talking about capable of repetition and we do have a class representative that apparently falls into that category, maybe that's the only one. I guess that's what I'm asking is maybe Mr. Ward is the only one who falls into that category, if I understand you correctly. Well, I'm sorry. I think I understood your question, Judge Inglehart. You're referring to someone who has his competency restored. Correct. Turns back to the criminal proceedings. Correct. And again lapses and is adjudged incompetent to stand trial again and is in the same position. Exactly. There's certainly no allegation in this record that that has happened or is going to happen, and it was not an argument that they made below, so it would be waived in any event. Let me ask you a question about the statute. It says that if they are found insane or incompetent, they're acquitted rather than found not guilty, which I find a little strange. So if they're acquitted, if they're cured in a mental institution and they no longer are insane or incompetent, they can't be tried or retried, can they? That's correct. And so my understanding was that Judge Inglehart was talking about incompetent detainees. That's a different issue. You're talking about persons acquitted by reason of insanity. Yeah. Are you acquitted if you're incompetent? No. Just insane? Just insanity. That's the other class that we're talking about. And so what happens to those individuals depends on whether the offense involved dangerous conduct, and if it did involve dangerous conduct, then they are committed to a state hospital for evaluation and treatment for this initial 30-day period. All the insanity acquittees go to maximum security units. And then the statute provides that they're there for 30 days for evaluation and treatment, and then at that point there is a hearing to determine what happens next. Do they need to continue to be held or do they need to be committed to some other institutions? That's how that works. Okay. Thank you. I just want to address quickly the issue of the court's delay. The way this court described it in Zeidman is that the court's unreasonable delay in ruling on class certification had to cause the mootness, and that's only been invoked in extreme cases and very rarely. The Cruz v. Houck case from this court, there was a 17-month delay between the class cert motion and the certification hearing. The Comer v. Cisneros case was a two-year delay. Here the district court ruled seven months after class certification briefing was completed, and under Rule 23 now district courts have a lot of latitude in the timing of certification. We're not aware of a court that has invoked this court delay since those 2003 amendments. I see I'm out of time. Thank you, sir. Thank you. Mr. Gates. May it please the Court. I'd like to first address the mootness issue and specifically the point with regard to the Genesis case, and the State takes the position that under Genesis you have to show that it's so fleeting that no plaintiff could possibly have a claim that lasts long enough. We believe that's an incorrect reading of Gerstein for several reasons. One, in Gerstein itself the court said that the record was unclear as to whether any of the named plaintiffs were still in jail at the time the class was certified, but that question did not stop the court from concluding that it was inherently transitory. The key in Gerstein is the uncertainty of how long the detention will last, not thinking about an average of how long it's actually going to last. It's uncertain because it cannot be ascertained at the outset for any particular individual who's going into detention because the reasons that they might be released earlier or later are not in their control, it's in the State's control. Gerstein says it is by no means certain that any individual would be in custody long enough to certify the class, and that's different from saying that you have to show that there could be no plaintiff who could have a detention long enough. Now, in Sanchez-Gomez, just last May, the Supreme Court is again talking about the Gerstein exception, and Sanchez-Gomez describes Gerstein as requiring that it be difficult for a named plaintiff to keep a claim alive long enough, and they use the word difficult, not the word impossible. What you're really doing with the Gerstein analysis is you're focusing on the conditions at the outset when this detention first starts. You don't know how long it's going to be. You might have a plaintiff who's going to be there long enough, but you have no way of knowing which plaintiff that's going to be. Let me ask you the flip side of what Judge Clement asked Mr. Kraft. What is the plaintiff's position with regard to reasonableness insofar as rising to the level of a constitutional violation? Our position is that this is an issue that the district court should decide after a full trial on the merits and hearing the evidence and weighing all the factors, so actually it seems we're in agreement with the state on that point, which is why it doesn't make sense for the state in its briefing to basically say that the district court had to define up front at the classification stage how long is an extended period of time, how long is too long. And this is a common issue. But then you wouldn't, it seems to me it would be difficult to outline the class definition if we don't know at what point someone becomes aggrieved and entitled to relief, the relief that you're seeking, which I understand is injunctive and declaratory. We don't really know what the parameters of that class is, whether it's a week or whether it's a month or what are the timelines before somebody actually enters into the class. Is that something that we should just pretermit and decide later once we, you kind of meet yourself coming and going, it seems like, in terms of what the class definition is going to be. We want a definition on the front end, and yet we can't really define it because we don't know. I think that was what Judge Clement was asking. At least that's how I interpreted it when she asked Mr. Craft. We just don't know who would fall into that group. I think a good case on this point is the Supreme Court in McLaughlin v. Riverside County, which was about getting prompt probable cause hearings after you're arrested. Now, at the end of that case, they finally came up with a rule that says the Constitution requires a hearing within 48 hours, so 48 hours is a reasonable time. They did not have that number at the beginning of the case when the class was certified. The plaintiffs described the release they sought as a prompt hearing. The district court's certification order described the class as including everyone who is in jail and hasn't had a hearing yet, so that would include anyone, people who've been there more than 48 hours or less than 48 hours. At that time, the court had not yet decided what exactly the Constitution requires in terms of promptness, but that didn't stop the class from being certified. In this case also, eventually the court will come up with a time frame of how long it's reasonable to expect the State to move these people into facilities, and there will be some class members who fall on the short side of that, and so they won't actually be injured, or they won't suffer the damage of being detained longer than what the court ultimately decides. Are you in any way challenging the State's bed policy that seems to be at the root of all this, that's causing all the delay? In other words, as I understand it, they say they have a fixed number of beds and they can't move anybody until the bed opens up. Is that right? That's our understanding, and we're asking the court to craft injunctive relief that would address that issue, and it could do so perhaps by ordering the State to increase its capacity, hire more people, get more beds. The time period, the waiting period has got to be influenced by that. If that's a problem, that's what causes it. It may be a cart before the horse to be fixing a reasonable time if the whole system is built on something that's unconstitutional. You're certainly correct that that's an issue that the court should consider when it's deciding this case on the merits, and at that point, then the State will be able to introduce evidence of its resource constraints, and both parties will have a chance to argue about what length of time is reasonable, and that's something that really comes at the merits stage. It doesn't need to happen up front with class certification. Well, your pleadings seem to indicate that you have a problem with policy first come, first served. Why is that unconstitutional? It's unconstitutional because they're detained for extended periods of time and deprived of the evaluation and competency restoration services. Well, they all want to be first. Everybody can't be first, so there has to be a logical progression of first in, first out, it seems to me. And the claim is that it's the delays are not the product of a professional judgment. But the delay would be shortened if the first person in is the first person out rather than the first person in being the last person out. So it seems like you're arguing against yourself. We're arguing that the length of the delay overall is a problem, and we don't think it's going to be solved just by changing people's position on the wait list. But the first come, first serve aspect of it is part of the violation because we allege people are not being sent to treatment based on an exercise of professional judgment. And we briefed all of that at the motion to dismiss stage where the court looked at the substantive claims and concluded that we stated a claim under that theory. But, again, at the class certification stage, we don't actually need to reach the question of whether you use the professional judgment standard or the deliberate indifference standard. As this court said in M.D. v. Perry and then the district court in M.D. v. Perry after the remand also said it did not have to decide between those two standards at the certification stage. Do you want the district judge to fashion a remedy that makes space or beds available at mental health facilities? Is that the ultimate goal of the class is to get some sort of decree that either orders the state to release folks who are already committed to these facilities in order to make room for new class members? That would be A. B would be to build some sort of tent city or something to increase capacity. And three, I guess, would be to order the state to spend money to build more facilities. I'm just trying to, and this does, I realize this isn't in the briefs, but it ultimately comes up in the nature of what the class's relief is going to be. Since we're fashioning a class, we can't just do that and I know you all are both pre-permitting the issue of timeliness, but even on a larger scale, the ultimate remedy for a class of individuals is to create more space in mental health facilities. Isn't that correct? That would probably be the remedy, although, again, the specifics of how that would be done. It would be one of those three things, wouldn't it? Yeah, and we would not advocate releasing people early because if they're in a state mental health facility, then they're in there for a reason. So that leaves either increasing the capacity somehow, including whatever way the state can efficiently do this and do it quickly. I mean, obviously we don't have years to build state-of-the-art facilities or to order the state to expend money building those facilities and, again, doing them quickly. So the tent city ideas want that. I hate to use that term because it obviously doesn't connote the best of circumstances, but there's got to be some way to increase capacity that doesn't involve multi-year construction projects. So one is to build some sort of facility that attaches on to existing facilities. The other would be to actually order the state to come up with the money to build, however, X number more facilities. And the specifics of that would, again, be hashed out after? Be up to the district judge. Merits by the district court. But I think this is not very different from what the state was ordered to do in Yates v. Collier, the case about excessive heat in the prisons. And that's similar because you had, again, a class of people. Everyone was affected by the common policy, which the common policy was defined as allowing inmates to be exposed to excessive heat conditions. Not everyone was affected in the same way because different people had different health conditions. Some were endangered a lot more by excessive heat than others. But this court said that that did not preclude class certification under 23B2. And in that case, also, the specifics of the remedy were not fully spelled out at the certification stage. The district court's certification order did not say this is the highest maximum temperature you can keep things at, although the final relief you have much more specifics. You have certain areas have to be kept no hotter than 88 degrees, certain specific categories of prisoners. Are you talking about the Baton Rouge Jail? What are you referring to? I believe it was Texas jails in that case, Texas prisons. I think we had the same issue, though, with the Angola. Angola. They get ice and fans? Yeah. Let me ask you, you mentioned Rule 23. Can you cite any authority to support your argument? I believe you state that the district judge effectively found that any class member's claims would be typical of all other class members. Is there some authority for that proposition under Rule 23? Well, I think we have case law that says the commonality and typicality requirements tend to merge, and typicality is simply do the named plaintiffs have the same claim as the rest of the class. But the argument that you made, not to interrupt you because I know you're not finished with your answer that I'm interested in, but the argument you seem to make is that it doesn't really matter if the named class reps are no longer there because all of the class members are going to have the same claim, so we don't really need to name a class rep. That's what the district court did, didn't it? It didn't just say bring me some people, I'm going to certify the class now, and I know there's people out there that can fulfill that role. It did say that and certainly would have been better if it had named the class reps and then done the certification order, but I think the record supports the determination that the district court made because we have the evidence is right there in the state's own declaration that describes how their system works. You know, they admit it's a centralized policy. They say this is how many beds we have. We're full. This is what the average wait time is for the maximum. You say it would be better if he had, but is there any authority for doing it the way that it was done in this case where we don't yet know who those individuals are? I'm not aware of any. You might just end up with hypothetical clients, right, if you don't know how long people are going to be delayed at the jail before they get to the hospitals where you can't really name people if you're not sure. And that's one part of the Gerstein inherently transitory, is you don't know how long anyone's claim is going to last, but then the second element of it is what we are certain of is that there is a constant class of other people. So can you have a class without representatives? You can have representatives who have had their individual claims already mooted, and that's how a Gerstein exception typically works. You would go back and you would name some of those people who... So why were you ordered to substitute new representatives? You filed a motion to substitute, right? We did, and we've done that actually several times. Each time that we amended the complaint, we would add some people in who were currently detained, and then they would moot out, and then we would amend and add more. And we can certainly keep doing that, and we did that immediately after the certification motion where the district court said, file a third amended complaint with new class reps, and then that's exactly what we did. And then we filed a motion to have those new people have the class reps appointed, and the district court simply rebriefed that motion, and it looks like he simply never ruled on it. Is there any authority for proceeding without real representatives, just have a class of typical and common characteristics? I'm not aware of any, but I think what could be done is simply have the district court amend the certification order under 23C to appoint the class reps, and that seems like an easy fix. What order are you seeking from this court? We are asking the court to affirm the district court's grant of certification. Across the board? Yes. If necessary, he could amend it to name the class reps. I think the rigorous analysis has been done. It's in different parts of the record because we had full briefing on the motion to dismiss, the substantive legal theories and everything. That's all in the record. We know the court considered that. The evidence is right there in the state's declaration. So we think the rigorous analysis has been done, even if it's not all spelled out in the actual order, and we would ask the court to affirm. Thank you, sir. Thank you. Mr. Graff, I'd like to ask you the same question. What do you want here? Are you seeking for us to reject class action entirely, or can we approve parts of what the district court has done and remand it for more work on the other parts? We have two different asks, Judge Dennis. Our first is that because this case is moot, the court should vacate the class certification order and remand with instructions to dismiss. If the court doesn't agree with us on that, it should still vacate the class certification order and remand for the district court to conduct the rigorous analysis that is not in this order. And it's not simply enough, as Mr. Gattas just suggested, that it have been done in chambers but not show up on the page. In MD v. Perry, this court said that the class certification order has to state specificity while these requirements are met, and it has to be supported with reasoning. That's not done here. And I want to talk about a couple of issues that came up in my opponent's argument. First, he suggested that you could cobble together the other filings in this case to find a rigorous analysis on the record. But the motion to dismiss doesn't really have anything to do with class certification. We filed a motion to dismiss on two grounds. One was that we read their complaint as stating or attempting to state a claim for a standalone right to treatment as a substantive due process concept. And we were actually just passing the night on that because they said, no, that's not what we're asking for. We're just saying we're held too long without treatment. And that's ultimately what the master judge in the district court decided, was that no, they weren't really asking for that. The other was that we said the insanity equities don't have a claim because we have an independent interest in detaining them just because they're dangerous. And that was rejected, too. None of that has anything to do with the class certification issues. It doesn't have anything to do with our dispute about deliberate indifference versus professional judgment. It just doesn't have any bearing on class certification analysis here. And, again, we're in the same posture as MD. They've cited the opinion on remand in MD where the district court said, I don't have to resolve this dispute about the legal standard because I can just decide there's a common question under either standard. But, one, that disregarded this court's instructions to actually dig into this dispute and decide it with reference to the claims the defense is going to prove. And, second, it doesn't help here because there's been no discussion of the deliberate indifference standard, much less any common questions in this order. On injunctive relief, Mr. Gaddis mentioned the Yates v. Collier case, the prison key case. That case is really distinguishable because look at what happened there. There was a four-day evidentiary hearing, and that resulted in fact findings. And from those fact findings, this court was able to say not just that variations in injury from a common policy don't preclude certification. The court actually went through those findings and said, yes, there's some variations, but those variations don't get down to the level of a substantial risk of serious harm that affects everyone in the class. So it was able, through that analysis, to say these variations don't mean there's still not one common injury. Here, that didn't happen because the district court never addressed the fact that individuals who go to maximum security units and individuals who go to non-maximum security units are on different lists, they go to different facilities, and are subject to vastly different wait times in terms of how they get there. The district court also never addressed the fact that we don't have any control over when counties transport individuals to state hospitals. And so sometimes we're ready to admit folks, and the counties just say, it's not that time of month, so we're not going to bring them over. And so the delays can be caused by an independent party, not before the court. Now, we're not asking this court to decide that because this is a court of review, not first view. But that should have been addressed by the district court in the first instance. And so that's our second ask, Judge Dennis, that if you say it's not moot, you should remand so we can actually have a rigorous analysis with proof in the first place. Thank you, sir.